# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **WINCE BROWN,** )  ) | |
| **Plaintiff,** ) | Civil Action Number |
| v. ) | **5:18-cv-01657-AKK** |
| ) | |
| **RICHARD HOWORTH, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Wince Brown asserts claims against the board of directors of the Tennessee Valley Authority[1] ("TVA"), his employer, for purported violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Doc. 1. Allegedly, the TVA discriminated against Brown by denying him two promotions in favor of younger, less experienced employees. The TVA has filed two motions: (1) to strike Brown's jury demand, doc. 35,[2] and (2) for summary judgment, doc. 14. In support of its motion for summary judgment, the TVA argues that Brown cannot show that its proffered reasons for the promotion decisions are pretextual. Docs. 14;

---

[1] In particular, the named defendants are Richard Howorth, chairman of the TVA's board of directors; and TVA board members, Kenneth Allen, A.D. Frazier, Virginia Lodge, Eric Satz, Jeff W. Smith, James Thompson, and Ronald Walter. Doc. 1 at 1-2.

[2] The motion to strike is due to be granted. First, Brown did not respond to the motion, and, as such, it is unopposed. Second, "there is no right to a jury trial against the TVA." *Chaney v. McBride*, 2014 WL 3566312, at *3 (N.D. Ala. July 18, 2014) (citations omitted); *see also Jones-Hailey v. TVA*, 660 F. Supp. 551, 552 (E.D. Tenn. 1987). Finally, a plaintiff does not have a right to a jury trial against a federal employer under the ADEA. *See Lehman v. Nakshian*, 453 U.S. 156, 168-69 (1981).

26. Brown counters by arguing that his superior experience coupled with the hiring manager's questions regarding Brown's retirement plans show that age was a factor in the promotion decisions. Doc. 32. Because questions of material fact exist regarding whether consideration of Brown's age tainted the promotion decisions, the motion for summary judgment fails.

## I.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the court of the basis of the motion and proving the absence of a genuine dispute of material fact. *Id.* at 323. If the moving party meets that burden, the burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "a 'mere scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019) (quoting *Anderson*, 477 U.S. at 252).

## II.

Brown, who is over the age of forty, has worked as a radiological chemical technician at the TVA's Brown's Ferry Nuclear Plant since 1985. Doc. 16 at 6, 8. As a technician, Brown performs chemical tests on samples at the Plant to ensure they comply with guidelines and limits set by federal and state law. *Id.* at 6. At the request of his supervisors and managers, Brown earned the qualification to train new technicians in the Plant's chemistry lab, and he trains new employees on the day-to-day operations of the lab and the proper way to test samples. *Id.* at 11, 16. Brown also observes new employees to be sure they perform their duties in a safe manner before signing off on the employees' "qualification cards" to reflect that they can perform certain tasks independently. *Id.* at 16. During the relevant time, Brown had the longest tenure of all employees in the chemistry lab, and he had trained most of

the lab employees. *Id.* at 11, 13, 17. According to Brown, Robert Chase Hensley, the temporary senior manager for chemistry, asked Brown about his retirement plans on several occasions and how much longer Brown planned to work, and questioned why Brown was still working. *Id.* at 12

In addition to his regular duties in the lab, Brown served periodically as a temporary supervisor for approximately a year at a time. Doc. 16 at 7, 21. Brown's supervisor approached him about the temporary position to allow him to try out a supervisory role. *Id.* at 7. As a temporary supervisor, Brown assigned work, ensured work was completed in a timely manner, and oversaw the lab's daily operations. *Id.* at 21.

In accordance with the written procedures for filling vacant positions, *see* docs. 17 at 3; 17-1 at 2-19, the TVA posted announcements for a nuclear chemistry supervisor at the Plant under job opening IDs 505511 ("Position 505") and 506121 ("Position 506") in November 2016 and June 2017. Docs. 17 at 3-4, 7; 17-2 at 2-3; 17-7 at 2-3. The minimum requirements for the two positions include an associate's degree in a scientific or engineering field and at least four years of applied chemistry experience, though a bachelor's degree and supervisory experience are identified as desirable qualifications for the positions. Doc. 17-2 at 3.

Hensley served as the hiring manager for both positions. Doc. 18 at 3. Relevant here, the TVA's hiring process includes two components: a records review

and a scored interview. Doc. 17 at 4. The hiring managers can weigh these components according to their preferences. *Id.* For Positions 505 and 506, Hensley allotted a weight of 30% to the records review and 70% to the interview. Doc. 18 at 3; *see also* doc. 17-1 at 14. For the records review, Hensley identified weighted job criteria to score candidates on, including education, supervisory experience, industry experience, and performance review ratings. Docs. 17 at 5; 17-4 at 2; 18 at 4. For the scored interview, Hensley developed ten job-related questions to assess the candidates' "leadership abilities, ownership and responsibility, [] supervisory mindset, and [] interest in taking on a supervisory position." Doc. 18 at 4-5. According to Hensley, who was thirty-one years old at the relevant time, the most important criteria for evaluating candidates for the two positions were an interest in being a supervisor and leadership ability. Docs. 18 at 4; 20 at 3; *see also* doc. 25 at 3.

Brown applied for and received interviews for both positions. With respect to Position 505, Hensley ranked Brown as the lowest-scoring applicant on the records review. Doc. 17-4 at 2. Hensley ranked Sarah Torgerson, a younger candidate who Brown trained when she began working at the TVA in 2009, as the highest-scoring applicant. Docs. 16 at 11; 17-4 at 2; 17-8 at 15. Hensley testified that he gave Torgerson a higher score than Brown on the records review because she

had a bachelor's degree, previous supervisory experience in the military, and excellent performance reviews.  Doc. 20 at 7.

Hensley and three other senior TVA employees interviewed five candidates for Position 505, including Brown and Torgerson.  Doc. 18 at 5.  Immediately after each interview, the interview panel discussed and assigned a consensus score to the candidates' responses to the ten interview questions.  *Id.* at 6.  The interview panel ranked Torgerson as the highest-scoring applicant and ranked Brown as the lowest-scoring applicant.  Doc. 17-5 at 2.  According to Hensley, Torgerson did well in the interview because she was confident and showed that she understood some of her limitations and her leadership style.  Doc. 20 at 8-9.[3]  In contrast, Hensley contends that Brown did not provide specific examples in his responses, did not seem to understand his own leadership style, and his responses and body language suggested that Brown "looks down upon the younger ones at the lab . . . ."  Doc. 20 at 8.[4]

After the records review and interviews, the TVA offered Position 505 to Torgerson.  Doc. 17 at 7.  Although the TVA's policies provide that a hiring manager should "[p]rovide constructive feedback to internal applicants who were interviewed

---

[3] Other interview panelists testified that Torgerson was direct and succinct in her responses, provided specific examples, and seemed passionate above improving the chemistry department and advancing in leadership.  Docs. 21 at 5; 22 at 5; 23 at 6.

[4] The other panelists also indicated that Brown failed to provide examples in his responses to questions and failed to "sell himself" by discussing his accomplishments.  Docs. 22 at 10; 23 at 12.

but not selected," doc. 17-1 at 9, Brown testified that Hensley did not follow-up with Brown, doc. 16 at 19.

With respect to Position 506, Hensley once again ranked Brown as the lowest-scoring applicant in the records review. Doc. 17-9 at 2. Hensley ranked Dennis Earl Webb, Jr., a younger applicant with less than ten years of experience who eventually received the position, ahead of Brown because Webb had a bachelor's degree. *Id.* Webb also received higher consensus scores than Brown following their interviews. Doc. 17-10 at 2. According to Hensley, Webb scored higher in the interview than Brown because, unlike Brown's vague responses, Webb was well prepared and gave specific examples in response to questions rather than generic responses. Doc. 20 at 15-17. After the records review and interviews, Hensley ranked Webb as the highest-scoring applicant, doc. 17-11 at 2, and the TVA offered Position 506 to Webb, docs. 16 at 13; 17 at 8; 17-11 at 2.

## III.

In his complaint, Brown asserts that the TVA discriminated against him in violation of the ADEA when it promoted younger, less experienced employees to the two supervisory positions instead of him. Doc. 1 at 2-3.[5] Under the ADEA, for

---

[5] Brown also pleads a retaliation claim. Doc. 1 at 4-5. But, Brown does not oppose the TVA's motion as to this claim, doc. 32 at 1, n.1, and has waived the claim, *see Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Alternatively, the claim fails because Brown has not shown a causal connection between his 2015 and 2016 EEO complaints and the TVA's 2017 promotion decisions. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (outlining elements of a retaliation claim).

7

federal sector employers,[6] "[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. 633a(a).  The Supreme Court recently held that this language "demands that personnel actions be untainted by any consideration of age." *Babb v. Wilkie*, 140 S. Ct. 1168, 1171 (2020).  In other words, to prevail on a federal sector age discrimination claim, a plaintiff only has to show that age played a role in the employer's decision instead of showing that age was the but-for cause of the challenged employment decision.  *See id.*[7]

At issue here is whether the record supports Brown's contention that an issue of fact exists on whether age factored in the promotion decisions.  For its part, the TVA asserts that Brown has not created a question of material fact regarding whether age played any role, or received any consideration, in the promotion decisions.  Docs. 33 at 2, n.1; 34 at 3.  As the TVA puts it, Brown has not shown that it based its promotion "decisions on anything other than the scores the candidates received and the TVA's assessment of the candidates' interview performance and leadership

---

[6] The TVA qualifies as a federal sector employer.  *See Watson v. Tennessee Valley Authority*, 867 F. Supp. 2d 1215, 1220 (N.D. Ala. 2012); *see also* 16 U.S.C. § 831 *et seq.*

[7] As the TVA points out, a plaintiff in a federal-sector age discrimination case still "must show that age was a but-for cause of the challenged employment decision" to obtain relief in the form of hiring, reinstatement, backpay, and compensatory damages.  *Babb*, 140 S.Ct. at 1171.  In other words, while Brown may be entitled to "other remedies" "if age discrimination played a lesser part in the decision," to obtain monetary damages he still must prove age was the but-for cause of the TVA's promotion decisions.  *Id.*

abilities." Doc. 26 at 16-17.  And, in particular, the TVA contends that it selected Torgerson and Webb for the positions because they scored higher than Brown on the records review and interviews.

The court agrees with the TVA that its subjective assessment of the candidates' personal qualities relevant to the supervisory position, such as leadership skills, is a legitimate, non-discriminatory reason for its promotion decisions.  *See Denny v. City of Albany*, 247 F.3d 1172, 1185-86 (11th Cir. 2001) (citations omitted).  But, this is just one part of the inquiry.  The court must also consider Brown's contentions regarding pretext.  In that respect, Brown contends that the TVA's subjective reasons for promoting Torgerson and Webb over him are pretext for age discrimination and that age was a factor in the promotion decisions.  Doc. 32 at 11-13.  To support that contention, Brown argues that his thirty-two years of experience compared to less than nine years for Torgerson and Webb, his supervisory experience at the TVA, and his experience training Torgerson and Webb made him the better-qualified candidate.  Docs. 16 at 11, 13; 19 at 3; 32 at 2-4, 12.

The TVA does not dispute Brown's technical qualifications or that Brown served as a temporary supervisor in the chemistry lab.  The TVA contends instead that those qualifications are not as important as the purported lack of leadership skills Brown demonstrated in his two interviews.  *See* doc. 33 at 4.  And, the TVA correctly notes that Brown's statements about his superior qualifications are not sufficient to

show that age played a role in its decisions to promote younger candidates. *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). But, the TVA's contentions are insufficient at this juncture to show the absence of a material dispute on whether age played a role in the selection decisions. Relevant here, Brown does not rely solely on his own statements about his qualifications to show that consideration of age purportedly tainted the promotion decisions. Brown testified that Hensley, the hiring manager, did not follow-up with him after the interviews for the two positions even though the TVA's selection procedure provides that Hensley should have done so. Docs. 16 at 19; 17-1 at 9; 32 at 12-13.[8] Although it is not a strong indication of bias, viewing the evidence in Brown's favor, the failure to provide feedback may lend credence to Brown's contention that Hensley did not want him in a supervisor position because of his age.

More significantly, Brown offered evidence that Hensley questioned Brown about his retirement plans on several occasions over the years and asked Brown why he was still working and when he planned to retire. Doc. 16 at 12. A hiring manager's unsolicited comments and questions about an employee's retirement plans could indicate the manager "intended to discriminate on the basis of retirement age . . . ." *Alsobrook v. Fannin Cty., Ga.*, 698 F. App'x 1010, 1013 (11th Cir. 2017).

---

[8] Hensley testified that he did meet with Brown "in passing" after the first interview. Doc. 20 at 15.

And, although Hensley's alleged comments do "not rise to the level of direct evidence of discrimination, and would not be enough standing alone to show a discriminatory motive, a [trier of fact] could infer from [them] some age-bias on [Hensley's] part when [these] comment[s] [are] coupled with other evidence in the case." *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 730 (11th Cir. 1999) (citing *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997)).

To close, Hensley's alleged questions about Brown's retirement plans, coupled with the evidence that Hensley did not provide feedback to Brown after the first interview and that Brown had supervisory experience in the chemistry department, trained the candidates the TVA selected for promotion, and worked at the TVA three times longer those candidates, are sufficient to raise a question of fact regarding whether age played a factor in the TVA's promotion decisions. While Hensley reached the promotion decisions in part based on consensus with other members of the interview panel, at this juncture of the case, the record is insufficient for the court to find as a matter of law that Hensley's alleged bias did not influence the other decision makers. Consequently, the TVA's motion on the age discrimination claim fails.

## IV. CONCLUSION

For the reasons discussed above, the motion for summary judgment, doc. 14, is due to be denied as to the age discrimination claim and granted as to the retaliation

claim. The motion to strike the jury demand, doc. 35, is due to be granted. A separate order will be issued.

**DONE** the 20th day of July, 2020.

                                                     _____
                                                     **ABDUL K. KALLON**
                                                     UNITED STATES DISTRICT JUDGE